UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**TODD LINDSAY,**

    **Plaintiff,**

v.                                                      Case No: 5:22-cv-177-TJC-PRL

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED.**

### I.  BACKGROUND

On July 3, 2019, Plaintiff filed an application for DIB benefits, alleging disability beginning January 1, 2019. The claim was denied initially, and upon reconsideration. At Plaintiff's request, a hearing was held on May 26, 2021, where both the Plaintiff and an impartial vocational expert testified. On June 30, 2021, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 16-26). Plaintiff's request for review was denied by the Appeals Council (Tr. 1), and Plaintiff initiated this action

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

on April 7, 2022. (Doc. 1). Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: psoriatic arthritis, and spine disorder, lumbar spondylosis with radiculopathy, status post fusion and revision. (Tr. 18).

The ALJ found that the Plaintiff had the residual functional capacity to perform less than the full range of sedentary work. (Tr. 20). The ALJ found that Plaintiff can occasionally push/pull with bilateral lower extremities. He can occasionally climb ramps/stairs, balance, stoop, kneel, and crawl, but never climb ladders, ropes or scaffolds and never crouch. He can frequently handle and finger, bilaterally. He cannot have more than occasional exposure to extreme cold, humidity, vibration, and workplace hazards such as unprotected heights and moving machinery.

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as food and beverage order clerk, charge account clerk, and call out operator. (Tr. 25). The ALJ's finding includes his consideration of Plaintiff's limitations that erode the unskilled sedentary occupational base, and the vocational expert's testimony regarding what functions Plaintiff could perform despite his limitations. (Tr. 25). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.    STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

#### A. The ALJ properly evaluated Plaintiff's superficial thrombophlebitis and the RFC is supported by substantial evidence

First, Plaintiff argues that the ALJ committed legal error by failing to identify Plaintiff's superficial thrombophlebitis as a "severe" impairment at step two of the sequential analysis. However, even if the ALJ erred in failing to include superficial thrombophlebitis as a severe impairment, that error would have been harmless because the ALJ did not stop her analysis at step two. *Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 824-25 (11th Cir. 2010).

The mere existence of an impairment is insufficient—rather, Plaintiff must show the impact of the impairment on his ability to work. To qualify as severe, an impairment must significantly limit a claimant's physical or mental abilities to do basic work activities for at least 12 consecutive months. 20 C.F.R. § 404.1520(a)(4)(ii), (c).

Here, the ALJ specifically considered Plaintiff's superficial thrombophlebitis, and the associated symptoms and limitations:

> The claimant has superficial thrombophlebitis in February 2019, which was improving in June 2019. He already had venous ablation. Repeat venous Doppler done on May 20, 2019 did not reveal any more superficial vein thrombosis (Exhibit 6F, page 2). It was noted that his recurrent severe superficial vein thrombophlebitis had resolved (Exhibit 16F, page 3). On March 27, 2020, the claimant did not appear to have the vein problem anymore (Exhibit 17F, page 8). On February 18, 2021, the superficial venous thrombosis had returned, which it is two episodes one year apart, the first lasting a few months (Exhibit 20F, page 2). He was referred to a vascular specialist (Exhibit 22F). However, he has been advised to wear compression socking and elevate his legs, but no surgical intervention. Moreover, he testified that he believes the clot is gone now.

(Tr. 19).

While evidence shows that Plaintiff experienced symptoms related to superficial thrombophlebitis in early 2019 and then again in February 2021, Plaintiff cites no record evidence that he required treatment for or had physical limitations related to superficial thrombophlebitis during the interim period. Thus, even if superficial thrombophlebitis caused limitations on Plaintiff's ability to perform work activity in early 2019 and then again in February 2021, he has failed to show that the condition limited his ability to perform basic work activities for at least twelve consecutive months.

At the hearing Plaintiff testified that he had recently been advised to elevate his legs—testimony that the ALJ noted in her decision. (Tr. 19). Plaintiff, however, cites no objective evidence from medical providers suggesting that he needed to elevate his legs <u>during</u> the workday, nor did he even allege that he had advised to elevate his legs prior to the February 2021 recurrence of superficial thrombophlebitis. Thus, even if Plaintiff's testimony about elevating his legs was accepted, the testimony fails to support his contention that superficial thrombophlebitis was severe for at least a twelve-month period.

Nevertheless, Plaintiff argues that the ALJ's decision reflects a lack of understanding regarding the condition of superficial thrombophlebitis. Plaintiff contends that there is no correlation between the existence of a blood clot and whether superficial thrombophlebitis requires treatment or constitutes a severe impairment. To support this, he cites to a May 2021 treatment note from Dr. Eagle, in which he referred Plaintiff to a vascular surgeon to address his ongoing symptoms. (Doc. 14 at 22; Tr. 1542-45). This argument is perplexing at best as the ALJ discussed this evidence which was related to Plaintiff's recurrence of superficial thrombophlebitis in February 2021. (Tr. 19, 1484). As the ALJ noted, Plaintiff had a follow-up with Dr. Eagle on May 17, 2021, at which point he recommended that Plaintiff stop the

anticoagulation medication that had been prescribed in February 2021 and referred him to a vascular surgeon for his assessment. (Tr. 1542-45). At most, this evidence supports a finding that Plaintiff had symptoms related to superficial thrombophlebitis for a three-month period in 2021.

Accordingly, Plaintiff failed to show that superficial thrombophlebitis affected his ability to work for any consecutive twelve-month period, and substantial evidence supports the ALJ's determination that the condition was non-severe.

After determining Plaintiff's severe impairments, the ALJ found that Plaintiff had the RFC to perform a range of sedentary work. Plaintiff argues that the ALJ erred by not including a requirement that Plaintiff elevate his legs. At the hearing, the VE testified that if a hypothetical person were required to elevate their legs to heart level for at least 30 minutes at ta time, twice a day, he would not be able to perform the representative jobs. (Tr. 62).

As discussed above, Plaintiff has cited no objective evidence of any medical provider requiring him to elevate his legs during the workday or recommending when or for how long he would need to elevate his legs due to superficial thrombophlebitis. Plaintiff also contends that he "needs to elevate his legs as a result of his severe lumbar impairment." (Doc. 14 at 24). Plaintiff, however, has failed to cite any objective evidence that his treatment providers advised him to do so. Instead, he cites his own subjective reports to his physical therapist from September to October 2019 that elevating his legs helped relieve his back pain. (Tr. 1176, 1179, 1182, 1185, 1188, 1191, 1194, 1197, 1200, 1203, 1206, 1209, 1212, 1215, 1223, 1226, 1229, 1232, 1235).

Moreover, the ALJ determined that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with

the record evidence. (Tr. 22-23). Plaintiff did not challenge the ALJ's evaluation of his subjective statements, and thus, waived any such argument.

Because Plaintiff cited no objective evidence supporting his allegation that he needed to elevate his legs during the workday (either because of superficial thrombolphlebitis or lumbar impairment), and the ALJ properly determined Plaintiff's subjective statements were not entirely consistent with the evidence of record, the ALJ properly declined to include a limitation regarding leg elevation in the RFC assessment.

### B. Substantial evidence supports the ALJ's determination that Plaintiff could perform a significant number of jobs in the national economy

After assessing Plaintiff's RFC, the ALJ found at step four that Plaintiff could not perform his past relevant work. (Tr. 24). Accordingly, the burden shifted to the Commissioner to produce evidence that a significant number of jobs existed in the nation economy that Plaintiff could perform given his functional limitations and other vocational characteristics. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001). To be considered disabled, Plaintiff would then have to prove that she was unable to perform the jobs the Commissioner listed. *Id*.

Here, the ALJ relied on the testimony of the VE that the hypothetical individual could perform representative work as a food and beverage order clerk, charge account clerk, and call out operator. (Tr. 25). For the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The ALJ is not required to include findings in the hypothetical that are not supported by the record. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Plaintiff makes two challenges to the ALJ's finding at step five that Plaintiff could perform a significant number of jobs in the national economy. First, Plaintiff argues that he regularly misses too much work for medical treatment to sustain competitive employment, given that the VE testified that employers typically tolerate only one absence per month. (Tr. 62). Plaintiff argues that from the alleged onset date (January 1, 2019) to the last medical evidence in the record (May 17, 2021), he had medical appointments (including physical therapy) on 66 days, averaging more than two per month, thus, surpassing the one-absence-per-month.

However, the Eleventh Circuit has considered and rejected this same argument:

> First, we are unpersuaded by Cherkaoui's argument that the excessive number of medical appointments she attended rendered her disabled. For starters, whether the number of medical appointments affects her ability to work is not an appropriate consideration for assessing her residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments. See SSR 96-8p. The number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities. Moreover, nothing in the record indicates that Cherkaoui was required, or would be required, to schedule her medical appointments during working hours so that they would interfere with her ability to obtain work.

*Cherkaoui v. Comm'r of Soc. Sec.,* 678 F.App'x 902, 904 (11th Cir. 2017).

Based on the reasoning in *Cherkaoui*, Plaintiff's argument is unpersuasive. Plaintiff's absenteeism from work is not a medically determinable impairment, nor a functional limitation or a restriction that results from the impairments. And while Plaintiff speculates that his treatment would require him to miss more than one day of work per month, nothing in the record indicates that Plaintiff would in fact be required to seek future treatment during

working hours. Accordingly, the ALJ was not required to adopt any limitations associated with absenteeism due to medical appointments and treatment.

Second, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform work with an SVP of 2 because the agency found he was limited to "only a very short, on-the-job training period," which equates to an SVP of 1. This argument is flawed for several reasons.

The State agency consultants at the initial determination level did not find Plaintiff had any limitation related to "only a very short, on-the-job training period." (Tr. 64-76). Instead, the statement appears in Explanation of Determination documents related to the initial denial by the State agency. (Tr. 78, 80, 82). The Disability Examiner, Prianka Gerrish, M.D., completed the Disability Determination and Transmittal form along with the attached Explanation of Determination Documents. See Program Operations Manual System (POMS) DI 24501.001B(1)(d)(1)-(2) (explaining disability examiners prepare the disability rationales, determinations, and determination notices).[2] Agency regulations provide that "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether you are disabled" are evidence that is "inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled."20 C.F.R. §§404.1520b(c). And an ALJ "will not provide any analysis about how [she] considered such evidence in . . . [a] decision." *Id.; Wilkins v. Comm'r of Soc. Sec.*, No. 6:19-cv-1265-PGB-EJK, at \*8-9 (M.D. Fla. July 30, 2020) (finding ALJ did not have to analyze Disability Examiner's finding under new regulations) (citing 20 C.F.R. §§ 404.1520b(c), 416.920b(c)), report and recommendation, adopted July 30, 2020.

---

[2] The POMS is available at https://secure.ssa.gov/poms.nsf/lnx/0424501001

Thus, consistent with the regulations, the Disability Examiners' statements are neither inherently valuable nor persuasive to the ALJ, so the ALJ need not consider them.

Thus, as discussed above, substantial evidence supports the ALJ's assessment of Plaintiff's RFC, and the ALJ's relevant hypothetical question to the VE mirrored the limitations in the ALJ's RFC finding. Accordingly, the VE's testimony is substantial evidence supporting the ALJ's determination that Plaintiff could perform a significant number of jobs in the national economy.

### C. The ALJ was not required to evaluate the statements in Plaintiff's physical therapy records that Plaintiff was unable to work

In his final argument, Plaintiff contends that the ALJ failed to consider opinion evidence from physical therapists that Plaintiff was unable to work secondary to dysfunction. (Tr. 1176, 1182, 1185, 1188, 1194, 1197, 1200, 1203, 1206, 1209, 1212, 1215, 1223, 1226, 1229, 1232, 1235). However, as the Commissioner points out, each statement Plaintiff claims was an opinion from a physical therapist was actually Plaintiff's own "Subjective Examination" completed by the physical therapist alongside Plaintiff's reported medical history, premorbid status, and occupation. In fact, no physical therapist offered any opinion that Plaintiff was "unable to work secondary to dysfunction." Thus, there was no opinion for the ALJ to evaluate.

And even if the physical therapists had made those statements, the ALJ would not have been required to provide any analysis since they are not medical opinions but rather statements on an issue reserved to the commissioner. 20 C.F.R. § 404.1520b(c) (an adjudicator is not required to analyze statements on issues reserved to the Commissioner because they are "inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled.").

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on August 10, 2023.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties